UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BETTY NICHOLS,                    )    Case No. CV 04-10045-JTL
                                  )
              Plaintiff,          )
                                  )
         v.                       )    MEMORANDUM OPINION AND ORDER
                                  )
JO ANNE B. BARNHART,              )
Commissioner of Social            )
Security,                         )
                                  )
              Defendant.          )
_____ )

**PROCEEDINGS**

On December 14, 2004, Betty Nichols ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of her application for supplemental security income. On February 7, 2006, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on June 20, 2005, defendant filed an Answer to Complaint. On January 10, 2006, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On September 25, 2002, plaintiff filed an application for supplemental security income. (Administrative Record ["AR"] at 104-06).  In her application, plaintiff claimed that, beginning on December 31, 1997, the following ailments prevented her from working: lower back pain, Hepatitis C, seizures, bipolar disorder, and manic depression.  (AR at 108).  The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration. (AR at 84-89, 93-96).  Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR at 97).

On December 16, 2003, the ALJ conducted a hearing in Orange, California.  (AR at 45-83).  Plaintiff appeared at the hearing with counsel and testified.  (AR at 47-67).  Joselyn Bailey, a medical expert, and David A. Rhinehart, a vocational expert, also testified. (AR at 67-73, 73-80).

On January 30, 2004, the ALJ issued her decision denying benefits.  (AR at 21-28).  In her decision, the ALJ concluded that plaintiff suffered from the following severe impairments: history of seizure disorder, history of substance abuse, asthma, Hepatitis C, bipolar disorder, low back pain, osteoarthritis, and muscle spasm. (AR at 27).  According to the ALJ, however, these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1.  (Id.). The ALJ found that, based upon her residual functional capacity, plaintiff retained the capacity to perform a significant range of light work.  (AR at 28).  Jobs that plaintiff could perform included work as an assembler of small products, cashier, and information clerk.  (Id.).  Ultimately, the ALJ found that plaintiff was not

disabled pursuant to the Social Security Act.  (AR at 28).

On February 25, 2004, plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision.  (AR at 15-16).  On October 6, 2005, the Appeals Council affirmed the ALJ's decision.  (AR at 4-7).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims in the Joint Stipulation:

1.   The ALJ failed to properly evaluate plaintiff's mental impairment.

2.   The ALJ failed to properly evaluate plaintiff's testimony.

**STANDARD OF REVIEW**

The Court reviews the ALJ's decision under 42 U.S.C. § 405(g) to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

DISCUSSION

**A.    Plaintiff's Mental Impairment**

Plaintiff claims that the ALJ erred in finding that plaintiff did not suffer from a severe mental impairment.  First, plaintiff contends that the ALJ erred by failing to offer a rationale for rejecting the opinion of a State Agency physician who found mild to moderate deficiencies in her mental functioning.   Furthermore, the record contained evidence consistent with the State Agency physician's opinion.   Finally, plaintiff argues that the jobs named by the ALJ that plaintiff could perform exceed plaintiff's cognitive limitations.  Thus, plaintiff contends that the ALJ erred in finding that she did not suffer from a severe impairment.

"An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities."   20 C.F.R. § 404.1521(a).   Basic work activities include the "abilities and aptitudes necessary to do most jobs," such as "understanding, carrying out, and remembering simple instructions" and "responding appropriately to supervision, co-workers and usual work conditions."  20 C.F.R. § 404.1521(b)(3)-(4); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988).   "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  Smolen, 80 F.3d at 1290 (quoting Yuckert, 841 F.2d at 306).   The severity inquiry at step two is a de minimus screening device, intended to allow the Commissioner to dispose of groundless claims.   Bowen v. Yuckert, 482 U.S. 137, 153 (1987); Smolen, 80 F.3d at 1290.

The ALJ found that plaintiff's mental impairments did not constitute a severe impairment. Specifically, the ALJ found that the medical evidence assessed no more than mild restrictions involving mental impairments. The ALJ referred to the treatment notes and opinion of the State Agency physician, Paul Balson, M.D. (AR at 265-82). While Dr. Balson found no significant limitations in most areas of understanding and memory, concentration and persistence, social interaction, and adaptation; he found mild to moderate limitations in plaintiff's ability to maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. (AR at 265-66). Dr. Balson also found moderate limitations in plaintiff's ability to understand and remember detailed instructions. (AR at 265). Overall, Dr. Balson noted that plaintiff had no restriction in activities of daily living, mild limitation in maintaining social functioning, and mild to moderate limitations in concentration, persistence, and pace. (AR at 279). Dr. Balson concluded that he did not have sufficient evidence to evaluate plaintiff's episodes of decompensation. (Id.). While the ALJ interpreted these findings as evidence that claimant did not suffer from more than a non-severe mental impairment, plaintiff claims that Dr. Balson's mild to moderate assessment of difficulties in maintaining concentration, persistence, or pace rise to the level of a severe mental impairment.

But the medical evidence suggests that plaintiff's mental impairment had more than a "minimal effect" on plaintiff's ability to perform work-related tasks. Plaintiff was diagnosed with bipolar disorder, heroin addiction, and polysubstance abuse. (AR at 212, 214, 215, 221, 246, 269). Additionally, plaintiff's treating physicians

prescribed the medications Zyprexa,[1] Paxil,[2] and Prozac[3] for plaintiff's mental impairments. (AR at 212, 214, 221, 369). Significantly, on September 19, 2002, M. Mack, M.D. assessed plaintiff with a Global Assessment of Functioning[4] ("GAF") score of 48.[5] (AR at 246). A GAF score between 41 to 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000). Notwithstanding the low GAF score from a treating source

---

[1]   Zyprexa is "used to treat certain mental/mood conditions (schizophrenia, bipolar mania). It works by helping to restore the balance of certain natural chemicals in the brain (neurotransmitters)." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Zyprexa"; follow "Zyprexa Oral" hyperlink; then follow "Uses").

[2]   Paxil is "a selective serotonin reuptake inhibitor (SSRI) used to treat depression, panic attacks, social anxiety disorder (social phobia), and a severe form of premenstrual syndrome (premenstrual dysphoric disorder- PMDD)." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Paxil"; follow "Paxil CR Oral" hyperlink; then follow "Uses").

[3]   Prozac "is a selective serotonin reuptake inhibitor (SSRI) used to treat depression, obsessive-compulsive disorder, panic attacks, certain eating disorders (bulimia), and a severe form of premenstrual syndrome (premenstrual dysphoric disorder or PMDD)." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Prozac"; follow "Prozac Oral" hyperlink; then follow "Uses").

[4]   "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

[5]   Plaintiff also contends that she was assessed GAF scores of 19 and 35. (Joint Stip. at 4-5). The record, however, indicates that the medical records of Anthony Johnson were erroneously attached and that Mr. Johnson received the aforementioned GAF scores and not plaintiff. (AR at 194, 195).

and its support of plaintiff's claim of disability, the ALJ did not address this GAF score in her decision.  Such omission constitutes error.[6]

Finally, at the hearing, plaintiff testified that she sought treatment for her emotional problems.  Specifically, plaintiff testified that she saw Larry Lawrence, M.D., a psychiatrist, and his replacement, "Dr. Prezoni," at least once a month since August of 2002 for treatment of her manic depression, bipolar disorder, and anger. (AR at 63).  Plaintiff also testified that she attended group therapy on a weekly basis for approximately five months. (AR at 64). Finally, plaintiff testified and medical records indicate that doctors prescribed medications for her to treat her mental impairment. (AR at 64-65, 212, 214, 221, 369).  Medical records from the Tri-City Mental Health Center and the East Valley Community Health Center support plaintiff's testimony regarding the duration and frequency of her treatment, as well as her medications.  (AR at 212-46, 369-84).  The sum of these circumstances is sufficient to meet the de minimus standard that must be applied to the Step Two severity inquiry.  See Bowen, 482 U.S. at 153; Smolen, 80 F.3d at 1290.  Accordingly, in light of the foregoing, the Court concludes that substantial evidence

---

[6]  The medical opinion of plaintiff's treating physician is entitled to special weight.  Reddick v. Chatter, 157 F.3d 715, 725 (9th Cir. 1998).  "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester v. Chatter, 81 F.3d 821, 830 (9th Cir. 1995); see also Saelee v. Chatter, 94 F.3d 520 (9th Cir. 1996).  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  Reddick, 157 F.3d at 725.  Here, the ALJ failed to even mention the treating physician's GAF score, much less interpret or reject it.

1  does not support the ALJ's conclusion that plaintiff does not suffer

2  from a severe mental impairment.

3  **B.   Reversal and Remand is Appropriate**

4       The choice whether to reverse and remand for further

5  administrative proceedings, or to reverse and simply award benefits,

6  is within the discretion of the Court.  McAlister v. Sullivan, 888

7  F.2d 599, 603 (9th Cir. 1989).  Remand is appropriate where additional

8  proceedings would remedy defects in the ALJ's decision, and where the

9  record should be developed more fully.  Id; see also Rodriquez v.

10  Bowen, 876 F.2d 759, 763 (9th Cir. 1989); Marcia v. Sullivan, 900 F.2d

11  172, 176 (9th Cir. 1990).  An award of benefits is appropriate where

12  no useful purpose would be served by further administrative

13  proceedings, see Gamble v. Chater, 68 F.3d 319, 322-23 (9th Cir.

14  1995), where the record has been fully developed, see Schneider v.

15  Commissioner of the Social Security Administration, 223 F.3d 968, 976

16  (9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1455 (9th Cir.

17  1993), or where remand would unnecessarily delay the receipt of

18  benefits.  See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

19       In this case, the Court finds remand appropriate.  On remand,

20  the ALJ must determine whether the evidence establishes a severe

21  mental impairment.  The ALJ must then determine whether the severe

22  impairment meets or equals a listed impairment.  At the step two

23  inquiry, the ALJ must consider the combined effect of all plaintiff's

24  impairments on plaintiff's ability to function, without regard to

25  whether each alone was sufficiently severe.  See Smolen, 80 F.3d at

26  1290.  The ALJ must then determine whether the impairment prevents

27  plaintiff from performing work she has performed in the past.  If

28  plaintiff cannot perform her past work, the ALJ must finally determine

whether she is able to perform other work in the national economy in light of her age, education, and work experience.[7]


**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS this action for further administrative proceedings consistent with this Memorandum Opinion and Order.

DATED: May 8, 2006

/s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE

---

[7]   In the Joint Stipulation, plaintiff also argues that the ALJ erred in failing to properly evaluate plaintiff's testimony. As explained above, however, the ALJ's failure to find that plaintiff suffers from a severe mental impairment constitutes sufficient reason to remand this case.  Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments.  In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.